IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT EARL RAMSEUR,         §
#53900-177,                  §
          Movant,      §
                         §    No. 3:22-cv-00749-N (BT)
v.                           §    No. 3:16-cr-00065-N-1
                         §
UNITED STATES of AMERICA,    §
                         §
          Respondent.  §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Robert Earl Ramseur, a federal inmate at Residential Reentry Management (RRM) Dallas in Grand Prairie, Texas,[1] filed a *pro se* motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should deny Ramseur's § 2255 motion.

**Background**

Ramseur was the sole owner of R&R Insurance and Breakthrough Financial Services in Dallas, Texas, where he worked as a tax preparer. *See United States v. Ramseur*, 793 F. App'x 245 (5th Cir. 2019) (per curiam). Over several years, he prepared tax returns containing false deductions

---

[1] *See* https://www.bop.gov/inmateloc/ (last visited June 20, 2023) (Federal Bureau of Prisons (BOP) Inmate locator) (showing Ramseur is expected to be released from BOP custody on December 22, 2025).

and/or credits that resulted in fraudulent tax refunds. *Id.* The Internal Revenue Service (IRS) opened an investigation into Ramseur's business after receiving a tip from the Texas Department of Insurance (TDI). *Id.* The investigation revealed that a disproportionate number of Ramseur's tax filings included a Schedule C—a document that reports profit or loss by a self-employed individual. *Id.* IRS agents interviewed taxpayers who had used Ramseur's services, and they discovered that most of the taxpayers were not self-employed—meaning they could not have Schedule C losses. *Id.* The IRS also sent an undercover agent to Ramseur's office, posing as a client who needed a tax return prepared. *Id.* Ramseur prepared the return and included a Schedule C loss for a non-existent marketing business. *Id.* at 247.

A jury found Ramseur guilty on 26 counts of aiding or assisting in the preparation or the presentation of a false or fraudulent individual income tax returns in violation of 26 U.S.C. § 7206(2), and the District Court sentenced him to a total term of 64 months' imprisonment. The District Court also ordered him to pay $399,400.00 in restitution to the IRS.

The Fifth Circuit Court of Appeals affirmed the District Court's judgment as to Ramseur's convictions, but it vacated the restitution order and remanded the case back to the District Court to correct the restitution order and written judgment. *United States v. Ramseur*, 793 F. App'x 245 (5th Cir. 2019) (per curiam).

The District Court resentenced Ramseur on March 9, 2020. The custodial portion of the original judgment remained the same, but the District Court reduced the restitution amount to $141,419.04. Ramseur appealed and challenged the new, reduced restitution order, claiming it exceeded the IRS's actual loss from the offenses of conviction. The Fifth Circuit affirmed the District Court's revised judgment, *United States v. Ramseur*, 830 F. App'x 737 (5th Cir. 2020) (per curiam), and the Supreme Court denied Ramseur's petition for writ of certiorari. *Ramseur v. United States*, 141 S. Ct. 1718 (2021).

On November 13, 2021, Ramseur filed a motion requesting an extension of time to file his § 2255 motion. *Ramseur v. United States*, Case No. 3:21-cv-2934-N-BT, (ECF No. 2). The undersigned magistrate judge entered findings and conclusions, recommending the case be dismissed without prejudice for lack of jurisdiction. *Id.* (ECF No. 3).[2] Ramseur filed objections. *Id.* (ECF No. 4). The District Court overruled the objections, accepted the magistrate judge's recommendation, dismissed the case without prejudice for lack or jurisdiction, and entered judgment. *Id.* (Ord. (ECF No. 5); J. (ECF No. 6)).

---

[2] For purposes of these Findings, Conclusions, and Recommendation, "CR ECF" refers to the underlying criminal action, case number 3:16-cr-00065-N-1, and "CV ECF" refers to this civil action, case number 3:22-cv-00749-N-BT.

Ramseur then filed his § 2255 motion (CV ECF No. 2) and a memorandum in support (CV ECF No. 3), in which he argues:

(1) His trial attorney provided ineffective assistance counsel when she

    a. failed to introduce evidence that he suffered from a traumatic brain injury (TBI) and post-traumatic stress disorder (PTSD);

    b. failed to present a factual defense of a constitutional violation committed by IRS Special Agent David L. Williams;

    c. failed to object and move to suppress the discovery involving the illegally obtained audio wire recording;

    d. failed to investigate the racial and prejudicial assumption of fraud alleged by the TDI;

    e. failed to move to suppress the evidence illegally seized from his home;

    f. failed to move for the dismissal of the unconstitutional indictment;

    g. failed to present witnesses and evidence that would have been exculpatory;

    h. failed to impeach the Government's witnesses;

    i. gave erroneous advice about his right to testify;

    j. failed to identify an unconstitutional jury that was prejudiced by the Government;

    k. failed to meet professional standards of conduct; and

    l. failed to clearly object to obvious errors in the judgment and at sentencing.

(2)    The Court lacked personal and subject-matter jurisdiction and imposed a sentence that exceeded the maximum allowed by law.

The Government responds that Ramseur's § 2255 motion should be denied with prejudice because he primarily raises claims that can be characterized as claims of ineffective assistance of counsel, but most are conclusory, many are contradicted by the record, others are procedurally defaulted or non-cognizable, and all are meritless. Ramseur filed a reply. His claims are fully briefed and ripe for determination.

## Legal Standards and Analysis

A.  Ramseur's ineffective assistance of counsel claims fail under *Strickland*.

Ramseur raises twelve claims of ineffective assistance of counsel. Mot. 12-23 (CV ECF No. 2); Mem. (CV ECF No. 3); *see also* Reply (CV ECF No. 7). To prevail on a claim of ineffective assistance of counsel, a movant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

1. Claim One

Ramseur initially argues that he is a disabled veteran of the United States Army, who was injured "while on a special mission," and now suffers from the effects of a TBI and PTSD. Mot. 12 (CV ECF No. 2); *see also* Reply 8 (CV ECF No. 7); Mem. 33-35 (CV ECF No. 7) (exhibits in support). He contends that his attorney provided ineffective assistance of counsel when she failed to introduce evidence of his medical conditions at trial, "and the court did not recognize TBI and PTSD as an illness." Mot. 12 (CV ECF No. 2). Ramseur concludes that his attorney's failure to introduce this evidence at trial violated his rights under the "Americans with Disabilities Act (ADA)." Mot. 12 (CV ECF No. 2); *see also* Reply 8 (CV ECF No. 7) (alleging his injuries are also covered by the Rehabilitation Act of 1973 (RA)).

This claim fails under both prongs of the *Strickland* standard. Under the performance prong of *Strickland*, a court's review of counsel's performance should be "highly deferential." 466 U.S. at 698. This is so because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Id.* at 689. And "[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *see also United States v. Scott*, 11 F.4th 364, 373 (5th Cir. 2021) (recognizing there are

"countless ways to provide effective assistance in any given case") (quoting *Strickland*, 466 U.S. at 689).

Ramseur states that he suffered an injury while on a mission in the United States Army, but he does not explain how this injury impacted his ability to understand the charges against him or assist his attorney with his defense. He has not shown how the mere fact that he suffers from a TBI and PTSD are relevant to whether he was guilty, as charged in the indictment. And because Ramseur's injury evidence was not relevant to the charges against him, it most likely would have been excluded at trial if his attorney had attempted to admit it. Likewise, there is no indication that Ramseur's TBI and PTSD interfered with his ability to understand the charges against him or the criminal proceedings. (CR ECF No. 175 at 6-8) (showing no indication Ramseur failed to understand what was taking place at his initial appearance on the violation of conditions of pretrial release held on February 26, 2019).

Ramseur has also failed to demonstrate prejudice. Under the prejudice prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The movant must "affirmatively prove," not just allege, prejudice. *Id.* at

693. If he fails to prove prejudice, the court need not address the question of counsel's performance. *Id.* at 697.

Ramseur fails to allege—much less demonstrate—that the result of his trial would have been different if evidence of his TBI and PTSD had been admitted. *See* Mot. 12 (CV ECF No. 2). Instead, he merely states that his attorney's failure to mention these conditions violated his rights under the Sixth Amendment and the ADA. *Id.* But Ramseur fails to elaborate, and his conclusory statement fails to demonstrate prejudice. *See Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998)* ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *see also Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)* (per curiam) ("We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.") (citing *Schlang v. Heard, 691 F.2d 796, 798 (5th Cir. 1982)* (collecting cases).

Ramseur also cannot demonstrate prejudice because evidence of his injury was before the District Court at sentencing. The PSR addresses Ramseur's assertion that he suffered a TBI while serving in the United States Army. (PSR ¶ 76); *see also* (CR ECF No. 125) (the District Court adopted the PSR "without change"). According to the PSR, Ramseur reported that he sustained a head injury in 1999 while he was in the Army, and thereafter, he suffered post-traumatic injury headaches. (PSR ¶ 76.) Also, when the

District Court gave Ramseur an opportunity to speak at sentencing, he stated that he had suffered a head injury causing a TBI and "was left for dead in all actuality." (CR ECF No. 140 at 7.) Ramseur has not established the result of his sentencing would have been different if his attorney had done anything more with the evidence of his TBI.

For these reasons, Ramseur's first claim fails under both prongs of the *Strickland* standard, and it should be denied.

2. Claim Two

Next, Ramseur argues that his attorney provided ineffective assistance of counsel when she "failed to present a factual defense of a constitutional violation," and due to this failure by his attorney, the Court lacked personal jurisdiction over him. Mot. 12 (CV ECF No. 2); *accord* Mem. 2 (CV ECF No. 3). Ramseur further argues that an IRS agent is "not an 'investigative or law enforcement officer under Title 18 USC 2510(7)" because "it's not an offense enumerated in 18 USC 2516." Mot. 12 (CV ECF No. 2). Ramseur concludes that the evidence used against him at trial was "obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968," and the evidence should have been suppressed. *Id.*

Ramseur apparently believes that the IRS agents assigned to his case failed to qualify as "investigative or law enforcement officers." 18 U.S.C. § 2516(2), (3); *see also* (CR ECF No. 137 at 120). However, Ramseur is mistaken. IRS agents, like the ones who investigated his case, qualify as

"investigative or law enforcement officers" for the United States. *See Fleming v. United States*, 547 F.2d 872, 875 n.4 (5th Cir. 1977) (recognizing IRS special agents are "investigative or law enforcement officers" under 18 U.S.C. § 2510(7)).

Ramseur's argument regarding the Title III wiretap provisions is similarly based on a misunderstanding of the law. Specifically, Ramseur refers to § 2510(7) and § 2516, which address who is authorized to use Title III wiretaps to intercept wire, oral, or electronic communications. However, a Title III wiretap is inapplicable to Ramseur's case. Because, in his case, the IRS agent made an appointment with Ramseur and legally recorded their consensual conversation on an iPhone. (CR ECF No. 137 at 124-45) (providing the recorded statements "appear to be voluntarily made"). The investigative technique used by the IRS agent did not require a Title III wiretap or prior court approval, and Ramseur's references to §2510(7) and § 2516 are misplaced.

Ramseur cannot demonstrate that his attorney provided deficient performance by failing to raise the Title II wiretap issue or that he somehow suffered prejudice therefrom. This claim fails under both prongs of the *Strickland* standard. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney

raised the issue.") (citing *Williams v. Collins*, 16 F.3d 626, 634-35 (5th Cir.1994)); *see also Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

For these reasons, Ramseur's second claim fails under both prongs of the *Strickland* standard*, and it should be denied.

3. Claim Three

Ramseur next argues that his attorney provided ineffective assistance of counsel when she failed to object and move to suppress the discovery involving the audio recording made by the IRS agent. Mot. 13 (CV ECF No. 2); Mem. 3 (CV ECF No. 7); *see also* Reply 19 (CV ECF No. 7) (alleging the failure to object to the "illegal recordings" played at trial amounted to "fruit of the poisonous tree"). Specifically, he contends that the audio recording was made "without a valid warrant," and it violated his rights under the Fourth and Fifth Amendments. Mot. 13 (CV ECF No. 2); *see also* Mem. 5 (CV ECF No. 3) (the agent's audio recording was made "without a warrant"). Ramseur further contends that the agent's affidavit included a "false allegation of violating 18 USC 287 (the required underlying offense for a felony status of 7206(2), a civil statute without it)," and the agent's warrant was a "flawed and unconstitutionally general warrant." Mot. 13 (CV ECF No. 2).

This ineffective assistance of counsel claim fails for several reasons. First, Ramseur invited the undercover IRS agent into his office, so a search

warrant was not necessary. Similarly, no warrant was needed for statements he voluntarily made, and the photographs the agent took of items found in plain view. Ramseur's argument that the undercover operation was legally invalid because no warrant was obtained is meritless. *See United States v. Santiago*, 410 F.3d 193, 201 (5th Cir. 2005) (finding the deputies were lawfully in the defendant's home when the firearm was discovered, and the firearm was lawfully seized under the plain view doctrine); *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) ("The plain view doctrine will justify such a seizure if (1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items."); *see also Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (setting forth the plain view exception to the warrant requirement).

Second, Ramseur appears to argue that he would not have prepared a tax return for the undercover agent. Mot. 13 (CV ECF No. 2) ("The defendant does not do business with a perfect stranger without a social security card, identification card and bank deposit information."). He further argues that "[t]he file was planted and altered by adding a Schedule C & E that actually reduced [the agent's] refund, contradicting the government's argument." *Id.* But these arguments are belied by the record. *See* (CR ECF No. 145-17 at 1) (a chart showing the fake Schedule C and E and how they resulted in an increase to Agent refund); (CR ECF No. 137 at 133-36) (agent testified the

false Schedule C information "would have come from the return preparer Mr. Ramseur," and he got a refund of about $1,800, when he should have owed the IRS money).

Third, the fact the Government later obtained search warrants to allow agents to search Ramseur's home in the Eastern District of Texas and his storage unit in the Northern District of Texas has no bearing on whether the undercover agent legally needed a warrant to make an audio recording of a consensual conversation.

Ramseur makes the following arguments in support of suppressing the two search warrant applications:

(1) The search warrant applications filed in the Eastern District of Texas and the Northern District of Texas failed to specify that the meeting between the undercover agent and Ramseur was recorded. Mot. 13 (CV ECF No. 2). But even if this were true, Ramseur fails to explain why this information was critically absent, and the search warrant affidavits otherwise address the undercover IRS operation involved in his case. *See In re Search of Public Storage Unit Space Number C219*, No. 3:13-MJ-457-BN, ECF No. 1 at 7-9 (N.D. Tex. Filed July 24, 2013) (application for the search warrant for Ramseur's storage unit located in Dallas, Texas); *Search Warrant*, No. 4:13-MJ-293-DDB, ECF No. 1 at 7 (E.D. Tex. Filed July 19, 2013) (application for the search warrant of Ramseur's residence located in Denton County, Texas);

(2) There is a "missing deputy signature" on the search warrant for his residence located in the Eastern District of Texas. Mot. 13 (CV ECF No. 13). Again, Ramseur's argument is misplaced. It appears he is referring to the Eastern District of Texas "filed" stamp on the search warrant return in connection with that search warrant. Mem. 16 (CV ECF No. 3). But the search warrant return Ramseur references has valid signatures from the magistrate judge and the IRS agent. *Id.* The fact that the "filed" stamp does not appear to have been initialed by the deputy clerk when they applied the stamp does not invalidate the search warrant issued in the Eastern District of Texas; and

(3) The two search warrant applications set forth facts sufficient to establish probable cause that Ramseur violated 26 U.S.C. § 7206(2) and 18 U.S.C. § 287. *See In re Search of Public Storage Unit Space Number C219*, No. 3:13-MJ-457-BN, ECF No. 1 at 7-9 (N.D. Tex. Filed July 24, 2013) (application for the search warrant for Ramseur's storage unit located in Dallas, Texas); *Search Warrant*, No. 4:13-MJ-293-DDB, ECF No. 1 at 7 (E.D. Tex. Filed July 19, 2013) (application for the search warrant of Ramseur's residence located in Denton County, Texas). Ultimately, the Government only pursued charges against Ramseur under 26 U.S.C. § 7206(2), but the reference in the search warrants to § 287 was not misleading. *See* 18 U.S.C. § 287 (involving a claim that is "false, fictitious, or fraudulent"). And his contention that a violation of § 287 was required to

14

show he violated § 7206(2) to amount to more than a mere civil violation, is incorrect. Mot. 13 (CV ECF No. 2). Rather, a violation of § 7206(2) is a criminal felony that carries a statutory penalty of no more than three years of imprisonment per violation. *See* 26 U.S.C. § 7206(2).

Each of Ramseur's arguments in support of his claim that his attorney should have moved to suppress the audio recordings fail under *Strickland*. Specifically, he cannot show that his attorney provided deficient performance when she failed to move to suppress the agent's audio recording or that he somehow suffered prejudice. *See Kimler*, 167 F.3d at 893 ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.") (citing *Williams*, 16 F.3d at 634-35; *see also Sones*, 61 F.3d at 415 n.5 ("Counsel cannot be deficient for failing to press a frivolous point.").

For these reasons, Ramseur's third claim fails under both prongs of the *Strickland* standard, and it should be denied.

4. Claim Four

Ramseur next argues that his attorney provided ineffective assistance of counsel when she "failed to investigate the racial and prejudicial 'assumption' of fraud alleged by the Texas Department of Insurance [ ] that violates the element of 'materiality' [required for a conviction under] 26 USC

7206(2)." Mot. 14 (CV ECF No. 2); *see also* Mem. 3 (CV ECF No. 3) (alleging his attorney's failure to investigate "caused the danger of undue prejudice, a violation of the Ku [sic] Klux Klan Act of 1871, The Civil Rights Act of 1866 and 1964, and constitutional rights"). He further argues that TDI illegally obtained his "private bank statements." Mot. 14 (CV ECF No. 2).

In or about February 2013, TDI agent contacted the IRS to report that Ramseur was being investigated for insurance fraud, and during that investigation, the TDI agent uncovered information indicating Ramseur may also be involved in filing fraudulent tax returns. (PSR ¶ 14.) As part TDI's investigation, it subpoenaed Ramseur's bank records; the subpoena uncovered multiple treasury checks that had been deposited directly into Ramseur's R&R business account. (PSR ¶ 14.) This raised suspicion because treasury refund checks are normally deposited into the taxpayer's account, not the tax preparer. (PSR ¶ 14.) This contact from TDI to the IRS led to the beginning of the IRS's investigation into Ramseur's filing of fraudulent tax returns. (PSR ¶ 14.) Thereafter, the IRS sought warrants, but they were not based solely on the tip from TDI. (PSR ¶¶ 15-17.) Rather, the IRS agent reviewed the tax returns Ramseur had filed, compared them to national statistics, and obtained further evidence through the undercover operation to demonstrate the requisite probable cause. (PSR ¶¶ 15-17.)

This ineffective assistance of counsel claim fails for multiple reasons. Initially, this claim fails because it is conclusory. Although *pro se* filings are

liberally construed, this does not mean the court must develop the arguments on behalf of the litigant. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue.") (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition … [and] mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross*, 694 F.2d at 1011-12); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (noting where a habeas petitioner fails to brief an argument adequately, it is considered waived) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

This claim also fails because it is belied by the record. Ramseur alleges that TDI colluded with various law enforcement agencies to incriminate him by circulating "illegally obtained private statements" and a "private photo." Mot. 14 (CV ECF No. 2). However, as discussed, TDI lawfully subpoenaed Ramseur's bank records and discovered multiple treasury checks that had been deposited directly into Ramseur's R&R

business account. (PSR ¶ 14.) And because these checks are normally deposited into a taxpayer's account, it created suspicion. (PSR ¶ 14.)

Ramseur has failed to show that his attorney provided deficient performance or that he suffered prejudice. *See Kimler*, 167 F.3d at 893 (citing *Williams*, 16 F.3d at 634-35); *see also Sones*, 61 F.3d at 415 n.5. For these reasons, Ramseur's fourth claim fails under both prongs of the *Strickland* standard*,* and it should be dismissed or denied.

    5. Claim Five

Next, Ramseur argues that his attorney provided ineffective assistance of counsel when she failed to file a motion to suppress the evidence seized from his home. Specifically, he contends that agents seized evidence from his home in "violation of the ban on 'no knock warrants'; 'fruit of the poisonous tree.'" *Id.* (claiming law enforcement failed to knock and announce before executing the search warrant); Reply 24 (CV ECF No. 7) (claiming the agent who "violently" broke into his home violated the "knock and announce rule"). Ramseur further contends that the agent who executed the search warrant at his house violently entered his home, broke his window and front door, and aimed assault weapons at him and a "guest." Mot. 15 (CV ECF No. 2); *accord* Reply 24 (CV ECF No. 7) (alleging the search of his home violated his Fourth Amendment rights). He concludes that his "constitutional and civil rights" were violated, and his attorney erred by

failing to issue subpoenas for witnesses to the search of his home. Mot. 15 (CV ECF No. 2).

Ramseur also argues that the agent misled the U.S. Magistrate Judge in the Eastern District of Texas into issuing a "general warrant" to search his home. Mem. 8 (CV ECF No. 3). But he is mistaken. "A general warrant is a warrant that authorizes 'a general exploratory rummaging in a person's belongings.'" *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The search warrant application in Ramseur's case was sufficiently specific, and it stated the specific items agents intended to seize. *See Search Warrant*, No. 4:13-MJ-293-DDB, (ECF No. 1 at 19-20) (E.D. Tex. Filed July 19, 2013) (application for the search warrant of Ramseur's residence located in Denton County, Texas). Ramseur also argues that agents seized a firearm during the execution of the search warrant at his home. Mot. 15 (CV ECF No. 2). This argument is not correct. As the Government explained, "Testimony from IRS agent David Williams confirmed that, contrary to Ramseur's testimony, agents did not take possession of Ramseur's .380-caliber firearm when they searched his home in connection with his prosecution for preparing fraudulent tax returns." *United States v. Ramseur*, No. 20-11112, 2021 WL 1172646, at *5-6 & *5 n.3 (Appellee's Br. March. 26, 2021).

In sum, each fact Ramseur relies upon in support of this argument fails, and he has not shown that his attorney provided deficient performance

or that he suffered prejudice. *See Kimler*, 167 F.3d at 893 (citing *Williams, 16 F.3d at 634-35*); *see also Sones,* 61 F.3d at 415 n.5. For these reasons, Ramseur's fifth claim fails under both prongs of the *Strickland* standard*,* and it should be denied.

### 6. Claim Six

Ramseur argues that his attorney provided ineffective assistance of counsel when she failed to move to dismiss the "flawed" and "conflated" indictment. Mot. 16 (CV ECF No. 2); *accord* Reply 24 (CV ECF No. 7) (claiming the Fifth Amendment was violated by the "flaws" in the indictment). Specifically, he contends that the indictment was "missing [a] signature and apparently [had an] altered date," and it "added [the] opinionated element of 'grossly overstated.'" Mot. 16 (CV ECF No. 2); *see also* Mem. 13 (CV ECF No. 3) (first page of the indictment). Ramseur further contends that the indictment was "unconstitutional [and] was formed with defamation letters and other arbitrary methods," such as anonymous internet and web postings, an illegal vehicle towing from Denton to Dallas, harassment, stalking, and the act of drilling a hole in the door of his car (a Hummer). Mot. 16 (CV ECF No. 2).

Ramseur claims there were various flaws in his indictment:

(1) The indictment was "missing [a] signature." *Id.*; *see also* Mem. 13 (CV ECF No. 3) (the first page of the indictment, and it refers to the file stamp and states "Missing Signature"). Once again, Ramseur is referring to

the file stamp affixed by the clerk and not the signature from the grand jury foreperson or the U.S. Magistrate Judge. Mem. 13-14 (CV ECF No. 3). The indictment in his criminal case was filed on February 18, 2016, and it appears to include a deputy clerk initial on the file stamp. (CR ECF No. 1 at 1.) Moreover, even if this claim were otherwise true, Ramseur has not demonstrated that a "missing" clerk signature on the indictment would render it legally invalid;

(2) Ramseur also claims that the indictment alleged the relevant tax returns were either false or fraudulent regarding a material matter because they included Schedule C losses where there were none or "grossly overstated" these losses. Mot. 16-17 (CV ECF No. 2); *see also* (CR ECF No. 1 at 2) (the indictment listing Schedule C losses). Notably, he does not argue that the indictment failed to include an element of the offense charged, but rather, he claims that the "grossly overstated" language was "opinionated" and prejudiced the jury. Mot. 16-17 (CV ECF No. 2); *see also* (CR ECF No. 1 at 2-4) (counts 1-26 of the indictment). Ramseur's claim that the business losses were "grossly overstated" bears on whether the false or fraudulent statements were "material," and saying that certain business losses were "grossly overstated," did not add an element to the crime charged as he suggests. Rather, it simply described why some of the false or fraudulent statements in the tax returns were material;

21

(3) Ramseur takes issue with the Government's decision to indict him, and he argues that the decision was based only on "a photo and bank statements." Mot. 16 (CV ECF No. 2). But he is mistaken and has failed to overcome the undisputed fact that a jury found him guilty as charged when they saw the tax returns he filed and heard the testimony from taxpayers about how he added fictitious Schedule C losses to their returns. Ramseur claims that the IRS agents engaged in "covert collusion" and used inappropriate methods to investigate his case. *Id.* But he has failed to refer to anything in the record that provides support for this claim;

(4) Ramseur argues that he was not subpoenaed to testify before the grand jury before it decided to indict him, and this violated his rights under the Due Process Clause. Mot. 16-17 (CV ECF No. 2) (arguing the indictment was received from the grand jury in the absence of the defendant and his attorney). But Ramseur had no right to appear before the grand jury. *See United States v. Gardner*, 516 F.2d 334, 339 (7th Cir. 1975) ("[T]he defendant has no absolute right to appear before the grand jury.") (citing *United States ex. rel. McCann v. Thompson*, 144 F.2d 604, 605-06 (2d Cir. 1944); *United States v. Kernodle*, 367 F. Supp. 844, 854 (M.D.N.C. 1973));

(5) Ramseur refers to Federal Rule of Criminal Procedure 404(b) in his argument addressing grand jury proceedings. Mot. 16 (CV ECF No. 2) (stating Rule 404(b) "requires more than the 'assumption'"). Again, his argument is misplaced. Rule 404(b) deals with the notice that must be

provided to a defendant in a criminal case regarding evidence of other crimes, wrongs, or acts that the government plans to introduce against him *at trial*. Fed. R. Crim. P. 404(b); *see also United States v. Stroud*, 2022 WL 1063029, at *1 (N.D. Tex. Apr. 8, 2022); and

(6) Ramseur contends that the indictment against him was required to include additional facts or evidence, but he is mistaken. An indictment must only "be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1); *see also United States v. Sneed*, 2022 WL 35801, at *2 (N.D. Tex. Jan. 4, 2022). To the extent Ramseur is arguing that the evidence against him was insufficient to sustain his conviction under § 7206(2) with a finding of "willfully," the argument fails based on the jury's findings at trial and the Fifth Circuit's decision rejecting his argument attacking the sufficiency of the evidence. *See Ramseur*, 793 F. App'x at 248 (Ramseur argued "the evidence was not sufficient to show that the false statements were material, as required under 7206(2)").

In sum, Ramseur has failed to demonstrate any deficiencies in his indictment. Likewise, his attorney did not provide ineffective assistance under *Strickland* by failing to move to dismiss the indictment, and he has not shown he suffered prejudice. *See Kimler*, 167 F.3d at 893 (citing *Williams*, 16 F.3d at 634-35); *see also Sones*, 61 F.3d at 415 n.5. For these

reasons, Ramseur's sixth claim fails under both prongs of the *Strickland* standard, and it should be denied.

### 7. Claim Seven

Ramseur summarily argues that his attorney provided ineffective assistance of counsel when she failed to present witnesses and evidence that would have been exculpatory. Mot. 19 (CV ECF No. 2); *see also* Reply 19 (CV ECF No. 7). He concludes that his attorney's failure to present the favorable witnesses and exculpatory evidence impacted his outcome at trial. Mot. 19 (CV ECF No. 2).

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (citing *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (citing *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). To show ineffective assistance of counsel in the context of an uncalled witness, a movant must: (1) name the witness he would have called; (2) show the witness would have been available to testify; (3) show the witness would have testified; and (4) show there is a reasonable probability the witness would have provided testimony that would have made a difference in the outcome of the trial. *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) (per curiam) (citing

*Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)); *see also Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir. 1984) (petitioner failed to meet his burden of showing that uncalled witnesses would have testified favorably to his case). When "the only evidence of a missing witnesses' [sic] testimony is from the [movant], this Court views the claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (quoting *Lockhart*, 782 F.2d at 1282). Generally, when a movant fails to present at least some evidence from an uncalled witness regarding the witness's potential testimony and willingness to testify, it is fatal to an ineffective assistance of counsel claim. *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *see also Sayre*, 238 F.3d at 636.

Ramseur contends that his attorney should have called the "home guest" present during the execution of the search warrant in the Eastern District of Texas as a witness at trial. Mot. 19 (CV ECF No. 2). He further contends that the "home guest" was willing to testify about the violent entry made by agents at his home. *Id.* But Ramseur has failed to show that the "home guest" would have been available to testify at his trial. Mot. 19 (CV ECF No. 2); *see Bray*, 265 F. App'x at 298; *see also Alexander*, 775 F.2d at 602. Likewise, he has failed to demonstrate that the testimony from the "home guest" would have made a difference in the outcome of his trial. Mot. 19 (CV ECF No. 2); *see Bray*, 265 F. App'x at 298; *see also Alexander*, 775 F.2d at 602.

Ramseur has set forth several facts in support of this argument, but each purported "fact" is false:

(1) Ramseur argues that many of the tax returns were self-prepared by the taxpayers, and they were not prepared by him. Mot. 19 (CV ECF No. 2). However, this claim is factually false. *See*, *e.g.*, (CR ECF No. 138 at 97) (Jose Fernando Robles testified Ramseur filed his tax returns for 2010, 2011, 2012); (CR ECF No. 142-1 at 3) (Robin Bryan's 2009 tax return was prepared by Ramseur); (CR ECF No. 142-4 at 3) (Robin Bryan's 2010 tax return was prepared by Ramseur); (CR ECF No. 142-7 at 5) (Robin Bryan's 2011 tax return was prepared by Ramseur); (CR ECF No. 142-10 at 4) (Robin Bryan's 2012 tax return was prepared by Ramseur); (CR ECF No. 142-13 at 3) (Anthony Walker's 2011 tax return was prepared by Ramseur); *see also* (CR ECF No. 1) (indictment listing taxpayers' initials);

(2) Ramseur also argues that many of the tax returns were confirmed by the taxpayers. Mot. 19 (CV ECF No. 2). In support, he points to Jose Robles's tax return as an example. *Id.* This assertion is false because Robles testified at trial that Ramseur added falsified Schedule C losses to his returns. (CR ECF No. 138 at 101-06);

(3) Ramseur contends that the execution of the search warrant at his home in the Eastern District of Texas was improper and very violent. Mot. 19 (CV ECF No. 2). But, as discussed, these allegations are belied by the record and false. *See supra* Claim Five;

(4) Ramseur claims that the business records support the accuracy of Bertraim Thomas's tax returns. Mot. 19 (CV ECF No. 2). But this claim is belied by the record. *See* (CR ECF No. 138 at 61-62) (Thomas testified that the Schedule C attached to her return showing she owed a religious business was "not true."); *see also* (CR ECF No. 145-19 at 1) (document demonstrating Thomas's tax return had Schedule C losses); Mot. 19 (CV ECF No. 2) (contends Thomas owed a "debt balance"). And, to the extent that Thomas owed a debt balance to the IRS, the falsely inflated refunds only lowered Thomas's overall tax liability, which still amounts to a violation of § 7206(2); and

(5) Ramseur also claims that a three-year statute of limitations applies to his violations of § 7206(2). Mot. 19 (CV ECF No. 2). But he is mistaken. Ramseur's crimes had a six-year statute of limitations, and his charges were timely filed. *See* 26 U.S.C. § 6531(3) (providing the statute of limitations for Ramseur's crimes under § 7206(2) was six years).

This claim fails for at least two reasons. First, Ramseur's argument is conclusory. *See Green*, 160 F.3d at 1042; *see also Ross*, 694 F.2d at 1012. Second, it fails because he relies on purported "facts" that are false. For these reasons, he cannot demonstrate deficient performance or prejudice, and his claim therefore fails under both prongs of the *Strickland* standard. Ramseur's seventh claim should be summarily dismissed or denied.

8. Claim Eight

Next, Ramseur summarily argues that his attorney should have impeached the Government's witnesses. Mot. 20 (CV ECF No. 2). He further argues that "[t]here was no preliminary hearing, no pre-trial conference until after jury selection." *Id.* Ramseur concludes, "The defendant did not recognize the [undercover] agent" as anyone that he'd seen before."). *Id.*

Once again, the facts Ramseur relies upon to support his claim are belied by the record. For instance, he argues that there was no "preliminary hearing," but that is incorrect. Ramseur was properly arraigned by a U.S. Magistrate Judge on February 24, 2016. (CR ECF No. 8). He did not have a detention hearing, but that was due to the fact that the Government did not pursue pretrial detention. Ramseur also argues that *voir dire* was not conducted prior to the final pretrial conference, but he fails to suggest why this approach was somehow legally deficient. And he has failed to show his attorney was deficient in connection with the timing of the *voir dire* or that he somehow suffered prejudice. The record also fails to suggest that the Government did not comply with its obligations under the Jencks Act. (CR ECF No. 83 at 1-2) ("The government has complied with [its obligation under the Jencks Act] and understands its continuing duty to do so."); *see also* 18 U.S.C. § 3500(b) ("After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the

possession of the United States which relates to the subject matter as to which the witness has testified."). And on April 15 and August 26, 2016, as part of its pretrial orders, the District Court ordered, "The Government shall provide each defendant with all Jencks Act material (18 U.S.C. § 3500), on the day prior to the testimony of the witness to whom such material relates."). (CR ECF No. 17 at 2) (the District Court's April 15, 2016 Amended Pretrial Order); (CR ECF No. 29 at 2) (the District Court's August 26, 2016 Amended Pretrial Order). It is not entirely clear what Ramseur is arguing when he states that his attorney "refused" to present IRS Form 8879s, an e-file signature authorization form. Mot. 20 (CV ECF No. 2). Those IRS forms were discussed at his trial, and the investigating agent testified that he saw such a form that listed the amount of his inflated refund, and that Ramseur calculated that return. (CR ECF No. 137 at 135-36.) Ramseur claims in this § 2255 action that he did not recognize the undercover IRS agent involved in his criminal case, but his assertion is of no moment. The agent recognized Ramseur and identified him for the jury. *Id.* at 121-24; 137-38 (IRS agent pointed out Ramseur in the courtroom during trial).

Ramseur's claim fails because it is fatally conclusory. *See Green,* 160 F.3d at 1042; *see also Ross,* 694 F.2d at 1012. This claim also fails because the purported "facts" Ramseur relies upon are false. *See Kimler,* 167 F.3d at 893; *Williams,* 16 F.3d at 634-35; *see also Sones,* 61 F.3d at 415 n.5. For

these reasons, Ramseur's eighth claim fails under both prongs of the *Strickland* standard, and it should be dismissed or denied.

9. Claim Nine

Ramseur next argues that his attorney "gave erroneous advice on the right of the defendant to testify." Mot. 20 (CV ECF No. 2). He further argues that his attorney informed him if he testified, "it would lead to 'a blood bath.'" *Id.*; *see also* Reply 19 (CV ECF No. 7) (his attorney "coerced the defendant not to testify").

This claim fails for several reasons. It fails because it is not supported by the record. (CR ECF No. 139 at 6) (trial transcript). In a colloquy with the District Court at trial, Ramseur confirmed that he understood: (1) he had a right to testify at his trial; (2) his attorney advised him about the pros and cons of testifying; and (3) it was his decision alone whether he would testify. *Id.* at 6-7. Ramseur further confirmed that he had decided not to testify at his trial after discussing the advantages and disadvantages with his attorney. *Id.* at 7. Finally, contrary to his present claim, he advised the Court that his attorney had "answered all of [his] questions [regarding his right to testify at trial] to [his] satisfaction." *Id.* at 6.

Ramseur's ninth claim also fails because it is so conclusory that it is legally deficient. *See Green*, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Ross*, 694 F.2d at 1012 ("We are thus bound

to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."); *see also Schlang*, 691 F.2d at 798 (collecting cases). Specifically, Ramseur's claim fails under the performance prong because he fails to explain how his attorney's advice was "erroneous." And to the extent that his attorney advised him not to testify at his trial, that advice was sound advice considering the overwhelming evidence against him. Under *Strickland*, a court's review of counsel's performance should be "highly deferential." 466 U.S. at 698. This is so because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Id.* at 689. And "[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *see also United States v. Scott*, 11 F.4th 364, 373 (5th Cir. 2021). Moreover, if Ramseur had testified, he would have risked harming his case further or committing perjury if he had taken the stand, and both occurred in a subsequent trial based on his failure to report to the Bureau of Prisons (BOP). *See Ramseur*, 850 F. App'x 325, 325-26 (5th Cir. 2021) (per curiam) (upholding the obstruction of justice enhancement under U.S.S.G. § 3C1.1 based on Ramseur's false testimony).

Ramseur's claim fails under the prejudice prong because he has not attempted to demonstrate prejudice. *See Strickland*, 466 U.S. at 697 (a

movant must satisfy both prongs of the two-pronged test); *see also United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995) (to prevail on a claim under *Strickland*, a movant must prove both elements of the two-pronged test); *see also United States v. Wines,* 691 F.3d 599, 604 (5th Cir. 2012) (demonstrating prejudice "is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result") (quoting *Harrington v. Richter,* 562 U.S. 86, 112 (2011)). Based on the evidence against Ramseur in this case and the testimony at his subsequent trial for failure to appear at the BOP, a decision by him to take the stand at his trial would have likely resulted in a "blood bath," just as his attorney allegedly predicted.

For these reasons, Ramseur's ninth claim fails under both prongs of the *Strickland* standard, and it should be dismissed or denied. *See Kimler*, 167 F.3d at 893.

10. Claim Ten

Ramseur argues that his attorney "failed to identify an unconstitutional injury that was prejudiced by the government." Mot. 21 (CV ECF No. 2). He provides several instances of alleged error. *Id.* In support of this argument, Ramseur contends: (1) there were less than twelve jurors, and he failed to consent; (2) a juror indicated to Ramseur they were under the influence of a secret society; (3) the jury failed to follow the instructions on materiality; (4) the Government prejudiced the jury by presenting an illegal

amount of tax returns; (5) a guilty jury verdict was returned on all counts, despite the fact that evidence was inconclusive; (6) the jury was misled about restitution; (7) the jury failed to follow the jury instructions on the element of materiality; and (8) the jury was not composed of his peers (it was a primarily white jury, and the one non-white juror slept through the trial). Mot. 21 (CV ECF No. 2); *see also* Mem. 6-7 (CV ECF No. 3) (claiming a "qualified black juror was excluded from the jury to attend a Beyonce concert," and another black juror was excused with a doctor's note); *see also* Reply 18, 20 (CV ECF No. 7).

Ramseur alleges that less than twelve jurors served on the jury that convicted him. However, this claim is belied by the record. The Court originally sat three alternate jurors. Two of the alternate jurors had to be excused during the trial. (CR ECF No. 136 at 138) (referring to seating of the "third alternate"). Then, on August 29, 2018, the remaining third and final alternate was excused when the jury began its deliberations. (CR ECF No. 139 at 30-31.) Therefore, the record reflects that Ramseur was convicted by a full jury of twelve jurors. *Id.* at 33-34 (polling the jury).

Ramseur also alleges that the one non-white juror slept through his entire trial, but he has failed to provide any record support for this allegation. Moreover, the Government commented at Ramseur's trial on the "attentive[ness]" of the jurors and how "interested" they were during the trial. *Id.* at 27.

Ramseur contends that there was only one non-white juror on his jury, but this claim lacks any record support. Moreover, the record suggests that at least two jurors from his jury had a Hispanic or Latino heritage. *Id.* at 33-34. In addition, Ramseur fails to allege that the Government exercised its strikes during jury selection in an unconstitutional, racially motivated manner under *Batson v. Kentucky*, 476 U.S. 79 (1986). And nothing in the record provides support for a finding there were irregularities with the *voir dire* process or the jury venire. Ramseur's contention is conclusory and should be summarily dismissed. *See Pineda*, 988 F.2d at 23 ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue.") (quoting *Woods*, 870 F.2d at 288 n.3).

Ramseur also contends that the Government misled the jury about restitution. This argument is misplaced and factually incorrect. Restitution was not an issue for the jury to decide, and it was not presented to them. Ramseur's first appeal to the Fifth Circuit addressed a restitution argument. *Ramseur*, 793 F.3d at 248-49. However, that restitution issue did not address a jury matter or involve evidence presented at Ramseur's trial for jury consideration. *Id.* at 248.

Ramseur asserts that a jury verdict was returned against him on all counts, but he claims the evidence was inconclusive. This argument is not supported by the record. Specifically, the record demonstrates that multiple witnesses testified that Ramseur included false Schedule C losses in their tax

returns without their knowledge with the intent to inflate their returns and increase his personal profits. *See e.g.*, (CR ECF No. 137 at 28-30, 54-56, 75-77, 109-10). Moreover, the IRS agent testified in detail about how Ramseur did the exact same thing during the undercover operation. *Id.* at 125-38.

Ramseur also asserts that the jury failed to follow the instructions they were given on "materiality." (CR ECF No. 112 at 11-12) (jury charge). But he has failed to provide a citation to the record in support of this bare claim, and the Court fails to find any evidence to support it. Moreover, the Fifth Circuit specifically rejected Ramseur's argument that the evidence against him was insufficient for a conviction because the materiality element of § 7206(2) was not met. *See Ramseur*, 793 F. App'x at 248.

Each of the facts Ramseur relies upon to support this argument are false, and he cannot show that his attorney provided deficient performance or that he suffered prejudice. For these reasons, Ramseur's tenth claim fails under both prongs of the *Strickland* standard, and it should be dismissed or denied. *See Kimler*, 167 F.3d at 893 ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

11. Claim Twelve

Ramseur argues that his attorney failed to "meet professional standards of conduct entrusted by the people of Texas." Mot. 22 (CV ECF

No. 2). Specifically, he contends that his attorney violated the "laws and rules of professionalism" and failed "to keep the committment [sic] to the creed for no other reason than it is right." *Id.* Ramseur provides the following examples: (1) his attorney talked the prosecuting AUSA into not "removing Counts 21-26, which were not 'clerical errors'; *id.*, (2) his attorney stated to the jury at closing argument that her excuse for "not meeting the professional standard was because of a cold"; *id.*; and (3) his attorney did not prepare for trial, "developed an adversarial relationship with [the AUSA]," *id.*, and made objections to her own motions and assumed the Government had an opposition.

Ramseur's argument is based on the following erroneous facts:

(1) Ramseur's attorney did not advise the AUSA not to remove Counts 21 through 26 during his trial. *Id.* The jury convicted him of these counts, but they were inadvertently left off the original judgment, (CR ECF No. 124), due to a clerical error. *See Ramseur*, 793 F. App'x at 250 (recognizing the final judgment omitted counts 21-26);

(2) Ramseur's attorney did not tell the jury that she had not met her professional standards due to a cold. Mot. 22 (CV ECF No. 2). Rather, his attorney merely apologized at the beginning of her closing argument because she had "a bit of a cold." (CR ECF No. 137 at 20.) The record fails to suggest that his attorney's cold prevented her from competently representing Ramseur in any respect; and

(3) The record belies Ramseur's claim that his attorney did not prepare for trial, and the email he attaches to his memorandum fails to show she had any inappropriately adversarial relationship with the AUSA. Mot. 22 (CV ECF No. 2); Mem. 18 (CV ECF No. 3). Rather, the email shows that Ramseur's attorney stated she would move to exclude testimony from the Government's witness list under Federal Rules of Civil Procedure 403 and 404, and she assumed the Government would be opposed to her motion. *Id.* This was a reasonable and logical assumption for his attorney to make. *Id.*

For these reasons, Ramseur's twelfth claim fails under both prongs of the *Strickland* standard, and it should be denied. *See Kimler*, 167 F.3d at 893.

12. Claim Thirteen

Next, Ramseur argues that his attorney provided ineffective assistance of counsel when she "failed to specifically and concisely object to clear and obvious errors in the judgment and [at] sentencing." Mot. 23 (CV ECF No. 2). In support, he refers to the following: (1) when the Fifth Circuit remanded this case, the Court declared it "illegal," *id.*; (2) the dismissal of Counts 21 to 26 was determined to be a clerical error, despite the AUSA's efforts to remove them from the judgment; (3) the restitution was not properly calculated; and (4) his sentence was illegal and violated his "constitutional and civil rights." Mot. 23 (CV ECF No. 2); *see also* Mem. 21 (CV ECF No. 3).

Ramseur argues that the Fifth Circuit declared his case "illegal" and remanded it back to this Court. However, he misstates the facts. On appeal, Ramseur argued that the Court's restitution order was unlawful for two reasons. *See Ramseur*, 793 F. App'x at 248. One, the IRS failed to account for the repayments some of Ramseur's clients made to the IRS. *Id.* Two, the restitution order exceeded the actual loss from the offense of conviction by accounting for 55 tax returns from 21 taxpayers. *Id.* The Fifth Circuit held:

> Here, as the Government concedes, the district court committed reversible plain error when it imposed a restitution order that included losses from tax returns other than the twenty-six for which Ramseur was convicted. Moreover, the district court committed reversible plain error by failing to account for the fact that several of Ramseur's clients paid the IRS for payments owed on tax returns that were the basis of Ramseur's convictions. Other witnesses testified that they made back payments to the IRS for unidentifiable tax years, which may be attributable to one of Ramseur's convicted offenses.

*Id.* at 249. Ultimately, the Fifth Circuit vacated the Court's restitution order and remanded the case back to this Court to reconsider the restitution order in a manner consistent with the Fifth Circuit's opinion. *Id.* at 250.

Also, on appeal, Ramseur argued that the case should be remanded for correction of the final judgment because the final judgment omitted Counts 21 to 26. *Id.* The Government agreed. *Id.* The Fifth Circuit remanded the case back to the District Court to correct the final judgment to reflect all 26 counts of conviction. *Id.*

Ramseur further argues that his restitution was not properly calculated, but this claim is not cognizable under § 2255. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (§ 2255 motions can raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice, and because misapplications of the sentencing guidelines do not fall into either category, they are not cognizable in § 2255 motions); *see also Robertson v. United States*, 2021 WL 662108, at *2 (N.D. Tex. Feb. 19, 2021) (citing *Williamson*, 183 F.3d at 462). Ramseur's claim regarding the restitution calculation is neither jurisdictional nor Constitutional. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) ("[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude which may not be raised for the first time on collateral review[.]"). This claim is not cognizable under § 2255, and it should be dismissed.

For these reasons, Ramseur's thirteenth claim fails under both prongs of the *Strickland* standard, and it should be dismissed, in part, or denied, in part. *See Kimler*, 167 F.3d at 893.

## B. Ramseur has not shown the Court lacked personal and subject-matter jurisdiction.

Last, Ramseur argues in his eleventh claim that his status as a tax preparer makes him an "employee" of the IRS, so "[t]he court was without

personal and subject-matter jurisdiction and imposed a sentence in excess of the maximum by law or otherwise open to collateral attack." Mot. 22 (CV ECF No. 2). Specifically, he contends that his case lacked an "underlying offense to make it a felony (i.e. 18 USC 371, 18 USC 1343, 18 USC 1343), Title 26 USCS 7206(2) gives the Tax Court jurisdiction for the subject-matter." *Id.*

This claim is procedurally defaulted because he could have but failed to raise this issue on direct appeal. When a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the movant can show cause for his failure to raise the claim on direct appeal and actual prejudice, or that he is actually innocent. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); *see also United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). A movant bears the burden of demonstrating either cause and actual prejudice, or that he is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). Ramseur did not raise this claim on direct appeal. *See Ramseur*, 793 F. App'x at 245. And he has not demonstrated cause and prejudice or actual innocence to excuse the procedural default. Therefore, this claim has been procedurally defaulted and should be dismissed.

This claim also fails on the merits.

(1) Ramseur was convicted of twenty-six counts of aiding or assisting in the preparation or presentation of a false or fraudulent individual income tax return in violation of § 7206(2). Section 7206(2) applies to anyone who "[w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document." 26 U.S.C. § 7206(2). Contrary to Ramseur's argument, there is no exception for tax preparers, such as he was. Likewise, § 7206(2) does not require a separate underlying felony in order for a tax preparer, or anyone else, to be prosecuted for a felony in federal district court;

(2) A conviction under § 7206(2) is punishable by up to three years' imprisonment. 26 U.S.C. § 7206. Ramseur was convicted of violating twenty-six counts of § 7206(2), and his statutory maximum sentence was three years' imprisonment per count with the counts to run concurrently. (PSR ¶ 97.) He was sentenced to 36 months' imprisonment on counts one through twenty-five, to run concurrently, and 28-months' imprisonment on count twenty-six, to run consecutively. (CR ECF No. 166 at 3.) Ramseur was

sentenced to a total term of 64 months' imprisonment, which is well below the statutory maximum sentence he could have received; and

(3) Ramseur suggests that the Tax Court, rather than the federal district court, would have exclusive jurisdiction over a federal criminal tax-related fraud case, such as his. This claim is meritless. When the IRS issues a final notice and determination of a tax deficiency, the affected taxpayer has a right to appeal that determination to the United States Tax Court. *See* 26 U.S.C. § 6330(d). On the other hand, a federal district court has the jurisdiction to address tax-related felonies. *See United States v. Isenhower*, 754 F.2d 489, 490 (3d Cir. 1985) ("[T]he district courts of the United States shall have original jurisdiction over all offenses against the laws of the United States.") (citing 18 U.S.C. § 3231).

For these reasons, Ramseur's eleventh claim fails under both prongs of the *Strickland* standard, and it should be dismissed or denied. *See Kimler*, 167 F.3d at 893.

### Conclusion

The District Court should DENY Ramseur's motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255.

Signed June 21, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*